**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**UNITED STATES OF AMERICA,**

**vs.**

**Case No. 4:04cr37-RH
Case No. 4:08cv10-RH/WCS**

**TERRY L. SCOTT,**

    **Defendant.**

_____/

### REPORT AND RECOMMENDATION TO DENY § 2255 MOTION

Defendant Terry Scott, proceeding pro se, filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255.  Doc. 63.  He sought and was granted additional time to file a memorandum, but did not file one and a show cause order was entered.  Doc. 66.  The Government filed a response in opposition and notice of filing exhibits.  Docs. 73 and 74.  Defendant filed a reply in opposition to the Government's response.  Doc. 77.

**Procedural History**

Defendant was charged with conspiracy, continuing from January 1, 2003, to the date of the indictment (July 6, 2004), to distribute and possess with intent to distribute "more than fifty (50) grams of a mixture and substance containing cocaine base,

commonly known as 'crack cocaine,' " in violation of 21 U.S.C. § § 841(b)(1)(A)(iii) and 846. Doc. 1 (count one). He was also charged with a substantive count of possession with intent to distribute "more than five (5) grams of a mixture and substance containing cocaine base, commonly known as 'crack cocaine,' " on or about June 4, 2004, in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(iii). *Id.* (count two).

The Government filed an information and notice of intent, advising that if Defendant was convicted enhanced penalties would be sought under 21 U.S.C. § § 841 and 851. Doc. 20. That document also referred to the charge in count one as involving "more than fifty (50) grams of cocaine base, commonly known as crack cocaine." *Id.*, p. 1. Given Defendant's prior felony drug offenses Defendant was subject to a mandatory term of life imprisonment, and the Government would seek the enhanced penalty. *Id.*, pp. 2-3.

Pursuant to a plea and cooperation agreement with the Government, Defendant pleaded guilty to count one. The agreement provided that Defendant was pleading guilty because he was, in fact, guilty of the charge in count one, and acknowledged that if the case went to trial the Government could present evidence to support this charge beyond a reasonable doubt. Doc. 23, pp. 1-2. He admitted to being convicted of two or more prior drug felony charges as alleged in the Government's information and notice of intent to seek enhanced penalties. *Id.*, p. 2. Defendant agreed that he faced a mandatory minimum life term on count one, and that the decision of whether to file a substantial assistance motion was left to the sole discretion of the United States Attorney. *Id.*, pp. 1, 5. A statement of facts was filed in support of the plea. Doc. 22. 45.

At the rearraignment proceeding on October 28, 2004, Defendant was advised of the rights he was giving up by pleading guilty, and he said he understood. Doc. 42 (transcript), pp. 5-6. He was advised of the charge against him in count one and of what the Government would have to prove in support of the charge. *Id.*, pp. 6-7. Specifically, the court advised that "[a] conspiracy is an agreement or understanding between two or more people to do something the law forbids – in this case, an agreement or understanding to distribute or possess with intent to distribute crack cocaine." *Id.*, p. 7. The court advised that the Government would have to show Defendant "knew the purpose of the unlawful plan and joined in it on at least one occasion," and "that the conspiracy involved at least 50 grams of crack cocaine." *Id.* Defendant said he understood.

Defendant told the court he read the statement of facts line by line and word by word before he signed it. *Id.* He said there were parts that were not true, and those portions were discussed on the record. *Id.*, pp. 8- 16. The court summarized that, while Defendant disagreed with a lot of the facts, during part of 2003 he was in the business of selling crack cocaine. *Id.*, p. 16. Defendant agreed he sold crack though he sold mostly powder cocaine, and agreed it was probably a little over 50 grams of crack cocaine. *Id.*, p. 17. The court advised that the minimum mandatory sentence was life, with the possible exception of earning a reduction through a substantial assistance motion filed by the Government. *Id.*, pp. 17-18. The court explained that the filing of a motion was entirely up to the Government, that if the Government decided any assistance he provided did not rise to the level of substantial assistance, "there won't be anything you can do about it. You'll be stuck with that decision," and sentenced to life.

*Id.*, pp. 18-19.  Defendant said he understood, and understood there would be no parole.  *Id.*, p. 19.

Defendant was further advised that unless a substantial assistance motion were filed the minimum sentence would trump the sentencing guidelines, but if the guidelines did apply Defendant was advised that the status of the guidelines was unclear at that time.  *Id.*, pp. 20-21.[1]  No matter what the Supreme Court decided about the guidelines, though, Defendant was told his guilty plea would still stand, and he would still get a life sentence absent a substantial assistance motion from the Government.  *Id.*, p. 21.

Defendant told the court he read the plea and cooperation agreement line by line and word by word before he signed it, and agreed to everything in it.  *Id.*, p. 22.  Defendant said no one had promised him a substantial assistance motion.  *Id.*, p. 23.  Defendant was given more time to talk to his lawyer, and said all his questions were answered.  *Id.*, p. 24.  Defendant pleaded guilty, and said he did so because he was in fact guilty.  *Id.*, p. 25.  The court accepted Defendant's plea.  *Id.*, p. 26.

Sentencing was held on February 3, 2005.  Doc. 43 (transcript).  Counsel advised that Defendant had just told him that him he (Defendant) did not understand what he was entering a plea to, and thought at sentencing they would challenge the amount of drugs involved.  *Id.*, p. 2.  Defendant told the court he understood when the court told him about the life sentence, but felt the Government thought he was lying and he was not lying, so he was unsatisfied with the decision not to file a substantial assistance motion.  *Id.*, p. 4.  Defendant said that he was not saying he was not guilty of

---

[1] Defendant entered his plea on October 28, 2004, prior to the January 12, 2005, opinion in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

conspiracy or that the amount of crack cocaine was not fifty grams or more, but seemed to be disagreeing with particulars in the PSR and why the Government thought he was not telling them the truth. *Id.*, pp. 4-7. This objection, the court noted, "gets to the separate question about the substantial assistance motion." *Id.*, p. 7.

Counsel for the Government explained they had not progressed to where a decision could be made on substantial assistance because only two proffers had been taken. *Id.*, p. 9. As to whether there would be a substantial assistance motion (or even further dealings) with Defendant in the future, "absent something that satisfies me that Mr. Scott is telling the truth, that probably is not going to happen." *Id.* The information from Defendant was in direct contradiction with information provided by Dwayne Montgomery, and the Government believed Montgomery was telling the truth. *Id.*, pp. 10-12.[2]

The court explained that Defendant could not be allowed to withdraw his plea just because the Government did not file a substantial assistance motion. *Id.*, pp. 16-20. As part of Defendant's argument that he was telling the Government the truth, he reasoned:

---

[2] Though Government counsel had requested polygraph testing for both Defendant and Montgomery, the DEA would – for reasons not apparent – approve the test only for one of them. *Id.* The test was given to Montgomery. Defendant asked why he could not take a polygraph, but admitted that he would tell the examiner he was distributing more than fifty grams of crack cocaine. *Id.*, pp. 16, 29. The court advised that "if what you told me and what you are going to tell the polygraph examiner is that you are guilty of this offense, then that's what matters for purposes of the guilty plea or for the motion to withdraw the plea." *Id.* Whether it was Defendant or Montgomery who was telling the truth, in other words, was irrelevant for purposes of Defendant's guilty plea. It went only to the Government's decision regarding substantial assistance. Before sentence was imposed, Government counsel said he would make a written request for approval for Defendant to take a polygraph test. *Id.*, pp. 31-32.

> I didn't say, okay, I only did ten grams of crack and 20 grams of crack.  I told the truth.  I said 60.  I could've tried to get under 50 grams or more of crack.  I'm not trying to get up under 50 grams or more, because I'm telling y'all the truth.
>
> If I was lying, I say, no, I only dealt 30 grams of crack.  I could've told you that, just say, okay, I did 30 grams of crack.  I didn't tell you that.  I didn't lie to you.  I told you the truth, that I did 60 grams of crack.

*Id.*, pp. 21-22.  The court responded that if he had said 30 grams there would have been a jury trial, so the jury could decide it beyond a reasonable doubt.  *Id.*, p. 22.  Defendant answered "[r]ight.  We didn't have to go through that because I want to tell y'all the truth."  *Id.*

The motion to withdraw the plea, treated as also a request to compel the filing of a substantial assistance motion, was denied.  *Id.*, p. 20.  Defendant was sentenced to a term of life.  *Id.*, pp. 32-33; doc. 30 (judgment).

The judgment was affirmed over Defendant's argument that the court erred in denying his motion to withdraw plea, and that the Government acted in bad faith in failing to file a substantial assistance motion.  Doc. 61.

**Standard of Review**

Defendant raises four claims of ineffective assistance of counsel in the § 2255 motion.

Ineffective assistance of counsel is a two part inquiry.  "A convicted defendant making a claim of ineffective assistance of counsel must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment," and must also "affirmatively prove prejudice."  Strickland v. Washington, 466 U.S. 668, 690, 693-694, 104 S.Ct. 2052, 2066-68, 80 L.Ed.2d 674 (1984).

In determining whether counsel's performance was deficient, Defendant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  466 U.S. at 686, 106 S.Ct. at 2064.  "The court must . . . determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance."  466 U.S. at 690, 104 S.Ct. at 2066.  "[B]ecause counsel's conduct is presumed reasonable, for a petitioner to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take."  Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000) (*en banc*), *cert. denied,* 531 U.S. 1204 (2001).  *See also* Fugate v. Head, 261 F.3d 1206, 1217 (11th Cir. 2001), (citing Chandler).

To establish prejudice due to alleged ineffectiveness of counsel in the context of a guilty plea, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Hill v. Lockhart, 467 U.S. 52, 58-59, 106 S.Ct 366, 370, 88 L.Ed.2d 203 (1985).  For example, where the alleged error is counsel's failure to discover evidence, the prejudice inquiry depends on whether the alleged evidence would have changed counsel's advice to plead guilty, which depends on whether the alleged evidence would have likely changed the outcome if the case had gone to trial.  *Id.*

>Moreover, in a challenge to a guilty plea:
>
>[T]he representations of the defendant, his lawyer, and the prosecutor at [the plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory

> allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977) (citations omitted).

The court need not approach the Strickland inquiry in any particular order, or address both parts if an insufficient showing is made on one. 466 U.S. at 697, 104 S.Ct. at 2069. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

**Grounds One and Two**

Defendant asserts ineffective assistance of counsel in the context of his guilty plea. In ground one, he claims that counsel failed to advise "of the correct application of the law relevant to a guilty plea for a drug conspiracy offense pursuant to Title 21 U.S.C. § § 841 and 846, and the law relevant to United States v. Booker and Cunningham v. California." Doc. 63, p. 5.[3] He claims counsel never informed him of the elements of the offense or the difference between a conspiracy and a buyer-seller relationship. *Id.*[4]

---

[3] United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), Cunningham v. California, 549 U.S. 270, 274-275, 127 S.Ct. 856, 860, 166 L.Ed.2d 856 (2007). Under these cases, the constitutional right to a jury trial is violation by a sentencing scheme "that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury *or admitted by the defendant.*" Cunningham, 549 U.S. at 274-275, 127 S.Ct. at 860 (emphasis added), citing Booker and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) (other citations omitted).

[4] A single buy-sell transaction does not prove a conspiratorial agreement, but an agreement may be inferred where there is a continuing relationship with repeated transactions, or references to other conspirators and details regarding the agreement. United States v. Mercer, 165 F.3d 1331, 1335 (11th Cir. 1999), *citing* United States v. Beasley, 2 F.3d 1551 (11th Cir. 1993) and United States v. Martinez, 96 F.3d 473 (11th

Defendant also claims both counsel and the court failed to advise "on the law in reference to what crack cocaine is that warrants the 100 to 1 enhanced sentence, different from that of cocaine base." *Id.* In reply to the Government's opposition, he asserts that "had be been informed that all cocaine base was not crack cocaine, and that the crack cocaine warranting the 100 to 1 enhanced penalty was cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, usually appearing in a lumpy, rocklike form, he would have never entered a plea agreement nor guilty plea, as he never had [involvement] with crack cocaine, nor did he ever process cocaine hydrochloride and baking soda into crack cocaine." Doc. 77, p. 4. He asserts that no one determined that he understood the definition of crack cocaine. *Id.*, pp. 6-7.

In ground two, Defendant claims that counsel was ineffective for allowing him to be sentenced in violation of <u>Booker</u>. Doc. 63, p. 6. He asserts that he "plead[ed] guilty to fifty grams or more of cocaine base in reference to the conspiracy charge of the indictment, not crack cocaine that warranted the 100 to 1 enhanced sentence." *Id.* i

The record, as summarized above, clearly reflects that Defendant was advised and understood what the Government would have to prove for Defendant to be convicted as charged in count one. He was told what a conspiracy was, and that it had to involve fifty grams or more of cocaine base, commonly known as crack cocaine. *See also* U.S.S.G. § 2D1.1(c), Note D (" 'Cocaine base,' for the purposes of this guideline, means 'crack.' 'Crack' is the street name for a form of cocaine base, usually prepared

---

Cir. 1996), *cert. denied,* 519 U.S. 1133 (1997) (other citations omitted). Here, while Defendant disputed some of the particulars in the Government's statement of facts, he agreed with the court that "during a substantial part of 2003, you were in the business of selling crack cocaine." Doc. 42, pp. 16-17.

by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form.").  The indictment and the notice of intent used the term "cocaine base, commonly known as crack cocaine,"[5] and the substance was referenced throughout the proceedings as crack cocaine.  As reflected in comments at sentencing, Defendant knew that if he had said it was less than fifty grams of crack – which he admitted would not be true – then quantity would have to be decided by a jury.

There was no Booker or Cunningham error as the facts supporting the statutory maximum, including type and quantity of the controlled substance, were admitted under oath by Defendant at the time of his plea.

Defendant did not then nor does he now give any indication that the substance was not, in fact, crack cocaine, or that he thought he was charged with some form of cocaine base other than crack cocaine.  See United States v. Stephenson, 557 F.3d 449, 452-453 (7th Cir. 2009) (crack is but one form of cocaine base, in determining whether a substance is crack the court generally relies on whether it was considered to be crack by "experts," those who use, buy, or sell it) (citations and footnote omitted); United States v. Dunbar, 553 F.3d 48, 63-65 (1st Cir. 2009) (discussing the difference between crack and other forms of cocaine base, finding ample evidence in that case to link defendant to crack, finding "no reason to believe that the defendant was involved in the distribution of any form of cocaine base (such as freebase or the paste form sometimes smoked in the Andes) other than crack cocaine.") (citations and footnotes omitted).

---

[5] *See also* PSR, ¶ 2 (using this term in summarizing ground one).

Defendant's claim regarding his understanding of the 100 to 1 sentencing ratio is unclear.[6]  What is clear, however, is that Defendant was advised of and said he understood what was charged against him in count one, what the Government would have to prove beyond a reasonable doubt before he would be found guilty of that charge, and that his sentence (absent a substantial assistance motion) would be life imprisonment.  Defendant told the court under oath that he understood these things, and that he was pleading guilty because he was in fact guilty.  He has not shown that his plea was not knowing and voluntary, or that counsel was ineffective in advising him to enter a guilty plea.  He did so with hopes of obtaining a substantial assistance motion.  He was understandably upset that the Government did not file the motion, but he agreed at the time of the plea that the decision was left to the Government.  He is not entitled to § 2255 relief on grounds one and two.

**Ground Three**

Defendant asserts ineffective assistance of counsel for failing to challenge the search and seizure of his residence based on a search warrant, as "the affidavit for the search warrant contained false and unreliable information from an alleged informant, and the information was false and unreliable."  Doc. 63, p. 8.  He claims he told counsel to contest the search, seizure, and warrant affidavit, but counsel did not.  *Id.*  Defendant does not identify what specific information was false or unreliable, or demonstrate that a motion to suppress evidence resulting from the search could have been successful.

---

[6] *See* Kimbrough v. United States, __ U.S. __, 128 S.Ct. 558, 564-569, 169 L.Ed.2d 481 (2007) (discussing the history of the crack and powder disparity in the statute and the guidelines).

Case Nos. 4:04cr37-RH and 4:08cv10-RH/WCS

In his reply to the Government's response, Defendant asserts that the agent used confidential informants without assuring that they were reliable and that the information was true. Doc. 77, p. 10. He also claims that Dwayne Montgomery gave false information which was relied on in the affidavit. Defendant asserts that Montgomery claimed he resided with Defendant, and Defendant gave him quantities of crack cocaine to sell from January to November of 2003. *Id.*, pp. 10-11. Defendant claims that Montgomery was independently selling drugs, had no involvement with him, and never lived with Defendant. *Id.*, p. 11. [7]

The Government has supplied the application and affidavit for search warrant. Doc. 74, pp. 7-14 in ECF (electronic case filing). The affidavit sets forth information given to the affiant officer by more than one person or informant. *See also* PSR, pp. 9 (explaining that the warrant was "obtained pursuant to information from various sources."). Even by the time of sentencing, as noted above, the Government believed that it was Montgomery, rather than Defendant, who was telling the truth. Defendant's vague claim of unreliable informants and false information is insufficient to establish any basis for a motion to suppress,[8] and certainly does not establish ineffective assistance of counsel. Kimmelman v. Morrison, 477 U.S. 365, 382, 106 S.Ct. 2574, 2587-88, 91 L.Ed.2d 305 (1986) ("a good Fourth Amendment claim alone" does not demonstrate

---

[7] Defendant also claims that the warrants are not on record as issued by the magistrate judge so authentication is necessary. Doc. 77, p. 12. The warrant was signed by me after a finding of probable cause and the return was made before the district judge.

[8] *Cf*. United States v. Cooper, 203 F.3d 1279, 1284 (11th Cir. 2000) ("[a] motion to suppress must in every critical respect be sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented," and "[a] court need not act upon general or conclusory assertions.") (citations omitted).

ineffective assistance of counsel for failing to raise it; "[o]nly those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial without the challenged evidence.") (footnote omitted).  Defendant has not demonstrated error of counsel or prejudice.

**Ground Four**

Defendant asserts that counsel was ineffective for causing him to enter a guilty plea when he was actually innocent of conspiracy.  Doc. 63, p. 9.  He claims counsel did not properly advise him, and "distorted the law applicable to the conspiracy charge" to induce him to enter a plea.  *Id.*  In his reply, Defendant claims that there must be an agreement by at least two people to take concerted action, and that there was no agreement between himself and any of the alleged coconspirators.  Doc. 77, pp. 13-14.  He asserts that if he was advised what was required to prove a conspiracy he would not have pleaded guilty.  *Id.*, p. 14.

As set forth above, the court explained that "[a] conspiracy is an agreement or understanding between two or more people to do something the law forbids – in this case, an agreement or understanding to distribute or possess with intent to distribute crack cocaine," that the Government would have to show Defendant "knew the purpose of the unlawful plan and joined in it on at least one occasion," and "that the conspiracy involved at least 50 grams of crack cocaine."  Doc. 42, p. 7.  Defendant said he understood what the Government would have to prove.  *Id.*  He admitted he was guilty of the conspiracy charged in count one and that the Government could prove his guilt.

The current allegations that he was misadvised, did not understand what a conspiracy was, and that he is actually innocent are contrary to Defendant's sworn statements to the court at rearraignment and do not entitle him to § 2255 relief.

**Recommendation**

It is therefore respectfully **RECOMMENDED** that the § 2255 motion, doc. 63, be **DENIED WITH PREJUDICE**.

**IN CHAMBERS** at Tallahassee, Florida, on April 7, 2009.

s/ William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.